This is a workmen's compensation case.
McKinney Petroleum Equipment, Inc. (appellant) is a corporation engaged in the business of selling products to major oil companies and to industrial plants which use petroleum-based products. Harold B. Connell, Jr. (appellee) was employed as vice-president of the corporation and as a salesman, receiving compensation in the form of commissions. His duties involved driving a van and making calls on customers in a three state area. On June 11, 1982 Mr. Connell was conducting his usual sales route and had stopped to see a customer. He stated that he was moving a spare tire in the back of the truck in order to place some merchandise in the truck when he felt a sharp pain in his lower back. Mr. Connell stated that he continued his sales route to Milton, Florida, and from there back to Mobile, Alabama.
Mr. Connell saw Dr. Dyas on June 11, 1982 for pain on the right side of the back and right leg, and then was examined by Dr. Park, an associate of Dr. Dyas, on June 29, 1982. Dr. Park determined that Mr. Connell had a narrowing of the disc space at "L4,5 and L5, S1." Dr. Park concluded that Mr. Connell had a ten percent disability to the back and recommended that Mr. Connell do no bending, climbing, or lifting of over twenty-five pounds.
Mr. Connell had back problems in 1981 due mainly to pain on the left side of the back and in the left leg. The causation was attributed to normal wear and tear. Full recovery had been made from this episode of back problems. At the time of the June 11, 1982 injury, Mr. Connell was working full time and was engaging in several sports. He was having no problems with his back.
Mr. Connell ultimately returned to work as an inside salesman for McKinney Petroleum Equipment, Inc. at a salary of $25,000 a year.
Mr. Connell filed a complaint in the Circuit Court of Mobile County, Alabama, on October 14, 1982, seeking compensation benefits from McKinney Petroleum Equipment, Inc.
McKinney Petroleum Equipment, Inc. responded to the complaint with an answer denying the allegations of the complaint.
Trial was completed on April 26, 1983 and the court rendered a decision on May 31, 1983. The court determined that claimant had a reduced earning capacity of thirty-three percent and awarded benefits commensurate with such finding. In making such award, the trial court said:
 "This Court finds that the difference between the plaintiff's [Mr. Connell's] average weekly wage before and after the accident and the permanent partial disability rating ascertained by the physician are indicative of his lost earning capacity."
The evidence shows that claimant's average weekly earnings were $681.59 before the accident and $448.75 after the accident. *Page 1046 
The evidence also shows that claimant suffered a ten percent permanent partial disability to his body as a result of the injury to his back.
The employer, McKinney Petroleum Equipment, Inc., has appealed to this court from the trial court's judgment awarding claimant workmen's compensation benefits.
Employer's first contention is that the trial court's award of benefits is erroneous because it considered the wrong amount of postinjury earnings to compute the award of benefits. Employer contends that claimant's postinjury earnings are $480.80 a week. This figure is ascertained by dividing $25,000 (the yearly salary of claimant after his injury) by fifty-two weeks. Employer says that the amount of $448.75 used by the trial court as the employee's weekly earnings after injury does not appear in the record. We disagree.
It is true that employer had agreed to pay claimant $25,000 a year after his injury. On a weekly basis this would mean that claimant should receive $480.80 per week. However, the record shows that claimant actually earned $13,452.40 from September 1, 1982, the day he returned to work, until the date of trial in April 1983. This amount of actual earnings divided by thirty weeks, which was the time worked as an inside salesman, amounts to $448.75 per week. This is the figure used by the trial court as the after-injury earnings to compute the compensation due claimant.
Section 25-5-57 (a)(3)(g), Code 1975, provides, in part, as follows:
 "In all other cases of permanent partial disability not above enumerated, the compensation shall be 66 2/3 percent of the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition. . . ." (Emphasis added.)
Further, Alabama courts have noted that a presumption of the degree of lost earning capacity is raised by a comparison of before- and after-earnings of the employee. Goodyear Tire Rubber Co. v. Downey, 266 Ala. 344, 96 So.2d 278 (1957). The trial court computed employee's loss of earning capacity on the basis of his actual earnings, and not on the basis of what he was supposed to receive. We find no error here.
Employer next says that the trial court erred in not considering claimant's preexisting physical condition as a factor in assessing compensation benefits. In support of its contention, employer relies on section 25-5-58, Code 1975, which provides:
 "If the degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury or infirmity, the employer shall be liable only for the disability that would have resulted from the accident had the earlier injury or infirmity not existed."
We examined this code section in Thompson Co., Contractorsv. Cole, 391 So.2d 1042 (Ala.Civ.App. 1980), and said:
 "The key words in these two Code sections are `disability' and `infirmity.' These terms refer to a condition which affects the ability to work as a normal man at the time of and prior to the accident." (Citations omitted.)
We consider our observations regarding the meaning of section25-5-58 to be equally applicable to the facts of the present case. The evidence in the case at bar shows that claimant had the ability and was working as a normal man at the time of and prior to his on-the-job accident. Consequently, the trial court was not required to consider claimant's preexisting condition as a factor in arriving at the percentage of ability to earn in his disabled condition.
Finally, employer says that the trial court erred in not taking into consideration the economic conditions then existing in its award of benefits to claimant. Employer submits that even if claimant had not been injured he would have suffered a reduction in earnings due to the depressed economic condition of the petroleum industry. *Page 1047 
Although Alabama courts have not addressed this specific issue, other jurisdictions have considered it. McKinney Petroleum Equipment argues that the Maine Supreme Court has stated that business conditions must be considered in determining the loss or reduction in wages that an employee is able to earn after an accident. Beaulieu's Case, 132 Me. 410,171 A. 696 (1934). More recently, however, the Court of Appeals of Arizona held that a reduction in earnings occasioned by business conditions cannot be considered in fixing the compensation of the injured employee unless this reduction isdirectly due to the injury sustained. University MechanicalContractors v. Industrial Commission, 135 Ariz. 365,661 P.2d 215 (Ariz.App. 1983).
Lawrence McKinney, executive vice-president of employer, testified that for about eighteen months prior to the trial sales were down due to the general economic conditions in the industry. Mr. McKinney also testified that Mr. Byrd, the person who replaced claimant as an outside salesman, had to be put on salary because he was unable to make sufficient sales.
Mr. McKinney testified, however, that claimant was a more experienced and effective salesman than Mr. Byrd and that the contacts claimant had accumulated over the years would enable him to be a better salesman.
The evidence also shows that claimant worked as a salesman for eight months of the eighteen months that employer had suffered depressed sales, and had earned substantial commissions.
Although there is evidence, some of which is recited above, which suggests that employer's sales were depressed due to general business conditions, there is also evidence that claimant was a very good salesman and that his sales during a portion of the depressed economic period were very substantial. Based on the evidence, the trial court could have concluded that claimant's sales would not necessarily have been reduced by deteriorating economic conditions.
In further support of the trial court's judgment, there is no evidence that the decline in business was directly related to claimant's injury as required by University MechanicalContractors, supra. Consequently, we cannot say that the trial court did not take into consideration the evidence concerning the economic condition of the industry and whether claimant's earnings would have been affected had he continued to be an outside salesman.
The judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.