ROBERTSON, Presiding Judge.
This is a workmen’s compensation case.
Roosevelt Roberts (employee) filed a complaint, alleging that he had suffered an injury on February 1,1990, when a tree fell on him, causing injury to his back, neck, shoulder, and left leg (which had to be amputated); that the accident occurred while he was employed by Larry Veazey (employer) as a pulpwood logger; and, that he was permanently and totally disabled. Following an ore tenus proceeding, the trial court entered a final judgment which found that the employee had suffered a 65% disability and ordered compensation for a period of 300 weeks.
The employee filed a motion for new trial, claiming that new evidence, a decision by an administrative law judge granting the employee disability benefits under the Social Security Act and stating that the employee’s impairment prevents him from performing any substantial gainful activity, should be admitted and a new trial granted. The motion was denied, and the employee appeals.
While the employee raises several issues on appeal, we find the dispositive issue is whether the trial court erred in failing to find that the employee was permanently and totally disabled.
Initially, we note that in reviewing workmen’s compensation cases this court must first look to see if there is any legal evidence to support the findings of the trial court. If such evidence is found, then we must determine whether any reasonable view of that evidence supports the trial court’s judgment. Ex parte Eastwood Foods Inc., 575 So.2d 91 (Ala.1991).
*1346 The employee testified that he is 36 years old and that on February 1, 1990, he suffered an on-the-job injury when a tree he was cutting fell on top of him. He testified that a co-worker cut the tree off of him, and that he was taken to a doctor’s office in Greensboro and eventually was taken to an orthopedic surgeon at Druid City Hospital, where surgery was performed on his leg. The surgery entailed the removal of an artery out of the right thigh in an effort to save the employee’s left leg. The surgery was unsuccessful, and the employee’s left leg was amputated above the knee. Also, he testified that he received neck, shoulder, and back injuries and that he was still being treated with therapy for those injuries. The employee testified that he still suffers from pain in his neck, shoulder, and lower back. He testified that he is married and has three children. The record reveals that he completed the ninth grade, that at the age of 17 he began working in the log woods, where he stacked and piled wood, and that later he began cutting and delimbing trees. The employee testified that he began working for the employer in 1978 and worked for him up until the injury. Also, he testified that, with an artificial leg, it is difficult to walk through the woods, and that he cannot carry a chain saw or other equipment used for cutting down trees. He also testified that he has had other jobs in which he dug trenches, put down telephone cables, and was a molder helper. However, he said he is currently unable to perform these vocations.
The record indicates that the employee has never had a job other than in logging and as a laborer; that he has never had any trade school education; that he has not received a (A general equivalency diploma; and that he has not been in the military.
Norma Stricklin, a self-employed vocational rehabilitation consultant, testified that she evaluated the employee’s vocational potential and assessed his disability. She testified that, considering the employee’s limitations, he will not be able to perform logging work and that he would be limited to light, sedentary work. She testified that, since the injury, the employee has lost access to about 84% of the jobs that he had access to prior to the injury and that he has a vocational disability rating of approximately 62-63%.
Marsha H. Schulman testified that she is a rehabilitation consultant and that she evaluated the employee on November 15, 1991. She testified that, based on an average weekly wage of $245, the employee’s vocational disability rating is 53 to 55%. Further, she testified that the employee can perform sedentary work but eliminated the possibility of jobs that would include climbing, crawling, and kneeling.
The employee’s treating physician, a specialist in physical medicine and rehabilitation, Dr. Kyung 0. Yoon, testified by deposition that, as a result of the amputation, the employee cannot go back to the logging job he had prior to the amputation and would be limited to light duty activity. He also testified that the employee will be physically limited in that he will not be able to run, should not carry more than 20 pounds, and should not walk for more than 15 to 20 minutes at a time. He further testified that he assigned a 36% permanent impairment to the employee’s body as a whole as provided by the American Medical Association guidelines for an above-the-knee amputation, but that that could change depending on the shoulder and spine injuries.
In Gilbreath v. Eastwood Foods, Inc., 575 So.2d 87 (Ala.Civ.App.1990), a case factually similar to this case, this court reversed the trial court’s judgment, which held that an employee who had injured his hands was permanently and partially disabled by 50% as to his ability to earn. On certiorari, our supreme court upheld this court’s judgment in Ex parte Eastwood Foods, 575 So.2d 91 (Ala.1991), by holding “that no reasonable view of the facts could support any conclusion other than that under the law Gilbreath was totally and permanently disabled.” Ex parte Eastwood Foods at 95.
Similarly, in J.S. Walton & Co., v. Reeves, 396 So.2d 699 (Ala.Civ.App.1981), the employee, as with the employee in the instant case, had an above-the-knee amputation as a result of a work related injury. In Walton, this court affirmed the trial court’s judgment that the employee suffered from a permanent and total disability and held that “[tjhere is *1347 evidence in the record to support the trial court’s conclusion that [the employee] could not work as a carpenters’ foreman or as a supervisor of such foreman and that because of his age, education, mental attitude, and limited mobility he could not be retrained for gainful employment.” J.S. Walton at 702.
In the instant case, the record reveals that the employee is 36 years old, that he still suffers pain from his neck, back, and shoulder injuries; that he will be unable to continue working in the logging business or to return to manual labor employment; that the employee has a ninth-grade education; that he has an I.Q. of 96; that he has never had a driver’s license; that although he may be able to obtain vocational rehabilitation, his language and math skills will have to be upgraded; that he cannot stand for any long period of time; and that he has lost access to the jobs that he had access to prior to the injury.
This court and our supreme court have consistently held that total disability does not mean absolute helplessness or entire physical disability, but, instead, is the inability to perform one’s trade or to obtain reasonably gainful employment. Wright v. Goodyear Tire & Rubber Co., 691 So.2d 518 (Ala.Civ.App.1991), cert. denied; W.Y. Shugart & Son, Inc., v. Cox, 578 So.2d 1382 (Ala.Civ.App.1991), cert, denied.
After a careful review of the record evidence, much of which was undisputed, this court cannot find that a reasonable view of that evidence supports the trial court’s judgment. Instead, a reasonable view of that evidence would support a judgment that the employee is permanently and totally disabled.
Accordingly, the judgment is reversed and the case remanded with directions for the trial court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
THIGPEN, J., concurs
RUSSELL, J., dissents.